STATE of Wisconsin, Plaintiff-Respondent,

v.

Jose MARTINEZ, Defendant-Appellant-Petitioner.

Supreme Court

*No. 87-2023-CR. Argued April 26, 1989.—Decided June 7, 1989.*

(Also reported in 440 N.W.2d 783.)

For the defendant-appellant-petitioner there were briefs and oral argument by *William J. Tyroler,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

LOUIS J. CECI, J. This case is before the court on petition for review of an unpublished decision of the court of appeals, dated August 10, 1988, which affirmed a judgment and orders of the Circuit Court for Racine county, Emmanuel Vuvunas, Circuit Judge, convicting the defendant of attempted murder by use of a dangerous weapon, under secs. 940.01(1), 939.32, and 939.63, Stats. 1985–86, and endangering safety by conduct regardless of life by use of a dangerous weapon, under secs. 941.30 and 939.63, 1985–86.[1] The issue presented for review is

---

[1] The statutes under which the defendant was convicted provided in relevant part as follows:

whether the admission into evidence of the extrajudicial statements made by the defendant's nontestifying codefendant at their joint trial violated the defendant's right to confront the witnesses against him. We hold that the

**940.01 First-degree murder. (1)** Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

**939.32 Attempt. (1)** Whoever attempts to commit a felony may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime; except:

(a) Whoever attempts to commit a crime for which the penalty is life imprisonment is guilty of a Class B felony.

. . .

(3) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

**941.30 Endangering safety by conduct regardless of life.** Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class D felony.

**939.63 Penalties; use of a dangerous weapon. (1)(a)** If a person commits a crime while possessing, using or threatening to use a dangerous weapon, the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

. . .

2. If the maximum term of imprisonment for a felony is more than 5 years or is a life term, the maximum term of imprisonment for the felony may be increased by not more than 5 years.

3. If the maximum term of imprisonment for a felony is more than 2 years, but not more than 5 years, the maximum term of imprisonment for the felony may be increased by not more than 4 years.

. . .

The defendant was also convicted under sec. 941.20(1)(b), Stats., for going armed with a firearm while under the influence of an intoxicant. The defendant did not appeal from this conviction.

extrajudicial statements made by the defendant's non-testifying codefendant were properly admitted into evidence under the excited utterance exception to the hearsay rule, sec. 908.03(2),[2] and that the defendant's right to confront the witnesses against him was not violated.

The facts of this case are as follows. On February 6, 1986, the defendant; his brother, John Martinez; and his brother's girlfriend, C.P., a minor, entered Hunter's Bar in the city of Racine. David Quiroz, an off-duty employee at the bar, asked John to leave the premises because John had brought C.P. into the bar. John refused to leave, and a physical confrontation occurred among several people, including the defendant, his brother, and David Quiroz, who at times were hitting one another. The defendant and his brother were eventually forcibly ejected from the bar.

Outside the bar, the altercation continued among the defendant, his brother, and David Quiroz. John Martinez began to verbally threaten David Quiroz. After each threat by John, David Quiroz would hit John. The threats were made in Spanish and were as follows: "I swear to God, David, you're going to die." "I'm going to kill you." "Quiroz, you f——— up." "You're a dead man." "We know where you live." "Don't make me do this to you, Dave." After making the threats, John reached into an inner pocket of his coat. Douglas Hood, the owner of Hunter's Bar, upon seeing John reach into

---

[2] Section 908.03(2), Stats., provides as follows:

**908.03 Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

**(2) Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

his coat, grabbed John's hand, and patted him down, looking for a weapon. Hood, however, did not find a weapon on John.

Immediately thereafter, the defendant, who was being restrained by Richard Cruz, a patron of the bar, freed himself from Cruz's grasp, pulled a gun from his coat pocket, and shot David Quiroz once. The bullet went through Quiroz and passed into the abdomen of a bystander named Richard Fisher. After the shooting, the defendant tried to pass the gun to his brother John, but was prevented from doing so by Douglas Hood, who seized the weapon and used it to hold the defendant and his brother until the police arrived.

In pretrial motions, the defendant moved for an order precluding the state from introducing the statements made by his brother during the fight with Quiroz or, in the alternative, a separate trial from his brother.[3] The state opposed the motions, arguing that the statements showed a conspiracy between the brothers. The circuit court denied both motions, finding, in an oral statement, that John Martinez' statements were admissible against the defendant because "those are part of what was going on, and the witnesses are going to testify to and the charge is they were acting in concert, so I don't see any problems with the statements made at the scene . . .."

At trial, John Martinez did not testify. Consequently, the defendant was unable to cross-examine him about the statements he made during the fight with Quiroz. Nevertheless, in accordance with the circuit

---

[3] John Martinez was tried with the defendant and convicted of being party to attempted murder under secs. 940.01(1), 939.32, and 939.05, Stats. 1985–86, and being party to endangering safety by conduct regardless of life under secs. 941.30 and 939.05, 1985–86.

court's pretrial evidentiary ruling, John's statements were admitted into evidence against the defendant. Sometime before the case went to the jury for deliberations, however, the state decided to abandon its conspiracy theory against the defendants. Therefore, the jury was instructed only on direct-actor liability as to the defendant and aiding and abetting as to John Martinez. On December 13, 1986, the defendant was found guilty by the jury of attempted murder, endangering safety by conduct regardless of life, and going armed with a firearm while intoxicated. On January 30, 1987, the defendant was sentenced to nineteen-year, nine-year, and nine-month terms of imprisonment to be served concurrently.

During post-conviction motions, by way of a motion for a new trial under sec. (Rule) 809.30, Stats., the defendant renewed his objection to the admissibility against him of the statements made by John during the fight. The circuit court ruled that the statements were admissible against the defendant under the present sense impression exception to the hearsay rule. Sec. 908.03(1).

At the court of appeals level, the defendant argued that the primary theoretical basis for admissibility at trial, statement of co-conspirator, became irrelevant once the state elected not to rely on a conspiracy theory. The defendant also challenged the "present sense" rationale utilized by the circuit court on motions after verdict. In response, the state maintained that the statements were not admitted to prove the truth of the matter asserted, and, therefore, the confrontation clause was not implicated. Consequently, the state argued that it was unnecessary to consider whether the statements fell within some hearsay exception.

The court of appeals held, citing *United States v. Chee,* 422 F.2d 52 (9th Cir. 1970), that John Martinez'

statements were properly admitted against the defendant as part of the *res gestae* "part of what was going on," which has been equated under the modern rules of evidence with the excited utterance rule of sec. 908.03(2), Stats. The court of appeals did not specifically discuss the elements of the excited utterance exception, nor did the court explain why John Martinez' statements fit within that exception. Similarly, the court of appeals failed to address the constitutional reliability of the statements as required by cases discussing the confrontation clause analysis. *See State v. Nelson,* 138 Wis. 2d 418, 437–39, 406 N.W.2d 385 (1987).

The issue presented for review by this court is whether the admission into evidence of the extrajudicial statements made by John Martinez violated the defendant's right to confront the witnesses against him. The threshold question to be determined is whether the statements fit within a recognized hearsay exception. *Nelson,* 138 Wis. 2d at 429–30; *State v. Bauer,* 109 Wis. 2d 204, 215, 325 N.W.2d 857 (1982). If not, the statements should have been excluded. *Id.* If so, the confrontation clause must be considered. *Nelson,* 138 Wis. 2d at 435–36; *Bauer,* 109 Wis. 2d at 215. There are two requisites to satisfaction of the confrontation right. *Ohio v. Roberts,* 448 U.S. 56, 65–66 (1980); *Nelson,* 138 Wis. 2d at 437; *Bauer,* 109 Wis. 2d at 215. First, the witness must be unavailable. *Roberts,* 448 U.S. at 65; *Nelson,* 138 Wis. 2d at 437; *Bauer,* 109 Wis. 2d at 215. Second, the statements must bear some indicia of reliability. *Roberts,* 448 U.S. at 66; *Nelson,* 138 Wis. 2d at 438; *Bauer,* 109 Wis. 2d at 215. If the statements fit within a firmly rooted hearsay exception, reliability can be inferred, and the evidence is generally admissible. *Id.* This inference of reliability does not, however, make the statements

admissible per se. *Id.* The case must still be examined to determine whether there are unusual circumstances which may warrant exclusion of the statements. *Id.* If the statements do not fall within a firmly rooted hearsay exception, they can be admitted only upon a showing of particularized guarantees of trustworthiness.[4] *Roberts,* 448 U.S. at 66; *Nelson,* 138 Wis. 2d at 438–39; *Bauer,* 109 Wis. 2d at 215.

We will first address the question of whether the statements made by John Martinez fit within a recognized hearsay exception. The admission of evidence is within the discretion of the circuit court. *State v. Fishnick,* 127 Wis. 2d 247, 257, 378 N.W.2d 272 (1985). However, discretion contemplates factual findings based upon an examination of the evidence and the application of those facts to the proper legal standards. *Id.* After making such determinations, the circuit court may exercise its discretion whether to admit the evidence. We will find an abuse of discretion if the circuit court's factual findings are unsupported by the evidence or if the court applied an erroneous view of the law. *After Hour Welding, Inc. v. Laneil Management Co.,* 108 Wis. 2d 734, 740–41, 324 N.W.2d 686 (1982).

---

[4] The state maintains before this court that it is unnecessary to consider whether the statements made by John Martinez fall within a hearsay exception because the statements were not admitted against the defendant to prove the truth of the matters asserted, and, therefore, the confrontation clause is not implicated. The state's position ignores the fact that the state, at trial, proffered John's statements for their truth under a hearsay exception, the circuit court accepted the statements as such, and the jury considered them as such. On the basis of this record, we conclude that the state's position on this issue cannot be sustained.

After reviewing the record in this case and the applicable law, we conclude that the statements made by John Martinez during the fight with David Quiroz were admissible against the defendant, in the discretion of the circuit court, under the excited utterance exception to the hearsay rule. Sec. 908.03(2), Stats. We recognize that the circuit court did not admit the statements on this basis; however, we find that the defendant was not prejudiced by the circuit court's ruling because the statements were properly admissible under the excited utterance exception. *Bertrang v. State,* 50 Wis. 2d 702, 708, 184 N.W.2d 867 (1971).

Sec. 908.03(2), Stats., provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> **(2)** Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Before a statement is available as an excited utterance, there must have been (1) a "startling event or condition" and (2) the declarant must have made the statement relating to the startling event or condition while "under the stress of excitement caused by the event or condition." *Muller v. State,* 94 Wis. 2d 450, 466, 289 N.W.2d 570 (1980).

In regard to the first element of the excited utterance exception, we find that the fight between John Martinez and David Quiroz was a "startling event or condition." John Martinez was being physically assaulted in a confrontation outside a bar at night. We

find that such circumstances are by their very nature "startling."

As for the second element of the excited utterance exception, this court stated in *Christensen v. Economy Fire & Casualty Co.*, 77 Wis. 2d 50, 56-57, 252 N.W.2d 81 (1977):

> The excited utterance exception, which was formerly part of the *res gestae* exception, is based upon spontaneity and stress which endow such statements with sufficient trustworthiness to overcome the reasons for exclusion of hearsay. In determining whether a statement qualifies as an excited utterance, the important factors for the judge's consideration are timing and stress. As we said in *Wilder v. Classified Risk Ins. Co.*, 47 Wis. 2d 286, 292, 177 N.W.2d 109 (1970), a case no less applicable because it concerned the older *res gestae* exception:
>
> 'It must be shown that the statement was made so spontaneously or under such psychological or physical pressure or excitement that the rational mind could not interpose itself between the spontaneous statement or utterance stimulated by the event and the event itself. . . ..'

(Footnote omitted.) We find that John's statements related to the "startling" event and that the statements were made under such psychological and physical pressure and excitement that the rational mind could not interpose itself between the spontaneous statement stimulated by the event and the event itself.[5] John's statements were strictly contemporaneous with the star-

---

[5] The defendant claims that John Martinez' statements cannot qualify as excited utterances because they are purely subjective and do not report observed facts. We find, contrary to the defendant's suggestion, that excited utterances are not limited to statements which describe a startling event or condition. Rather,

73

tling event. The statements were made while John was being physically assaulted. Under such circumstances, we conclude that an individual's reflective faculties would be sufficiently stilled to allow the statements made by the individual to become the unreflecting and sincere expression of the individual's impressions, beliefs, and intentions. As a result, we find that the statements made by John were properly admitted under the excited utterance exception to the hearsay rule. Sec. 908.03(2), Stats.

Consequently, we must examine the second question of whether the admission into evidence of the hearsay statements made by John violated the defendant's right to confront the witnesses against him. The right to confront witnesses against oneself is guaranteed by the confrontation clause of the sixth amendment of the United

---

the language of sec. 908.03(2), Stats., merely requires that the statement "relate to" the event or condition:

> Note that exception (2) has been expanded by use of the term 'relating' to a startling event or condition rather than the Model Code provision which is restricted to a statement which narrates or describes or explains the startling event or condition.

Wis. Stat. Ann. sec. 908.03, Judicial Council Committee's Note 1974, at 464. *See also United States v. Moore,* 791 F.2d 566, 572 (7th Cir. 1986) (excited utterance exception allows broader scope of subject matter coverage than does present sense impression exception, which limits the subject matter of the statement to a description or explanation of the event; however, the fact that a statement goes beyond a mere description of the event may be considered in deciding whether the statement is sufficiently related to the event to be spontaneous, or whether it was the product of conscious reflection); *State v. Williams,* 673 S.W.2d 32, 33–35 (Mo. 1984) (defendant's statement that the gun was unloaded and that "I didn't mean to shoot her," made fifteen seconds after the defendant shot the gun, was held to be admissible under the "excited utterance" exception to the hearsay rule).

States Constitution and art. I, sec. 7 of the Wisconsin Constitution. The sixth amendment's confrontation clause, made applicable to the states through the fourteenth amendment, *Pointer v. Texas,* 380 U.S. 400, 403 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; . . ." Article I, sec. 7 of the Wisconsin Constitution similarly provides: "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face; . . ."[6]

In *Ohio v. Roberts,* 448 U.S. at 65–66, the United States Supreme Court set forth a two-step test approach to determine whether the use of hearsay evidence is consistent with the requirements of the confrontation clause. The first step is to inquire whether the prosecution has either produced or demonstrated the unavailability of the declarant whose statement it wishes to use against the defendant. Generally, a witness's unavailability is not demonstrated unless the prosecution has shown that it "made a good-faith effort to obtain his presence at trial." *Barber v. Page,* 390 U.S. 719, 724–25 (1968). Notwithstanding this obligation, if there is no possibility of procuring the witness, the "good-faith" requirement disappears. The length to which the prosecution must go to produce a witness is a question of reasonableness. *Roberts,* 448 U.S. at 74. However, as this court noted in *State v. Bauer,* 109 Wis. 2d at 212–13, there are limited exceptions to the requirement that

---

[6] We have previously held that the confrontation rights under both constitutions are identical. *State v. Burns,* 112 Wis. 2d 131, 144, 332 N.W.2d 757 (1983). Accordingly, the same legal analysis will be applied in protecting the defendant's rights under the confrontation clauses of both the state and federal constitutions.

available witnesses be produced. Thus, available witnesses need not be produced where production would be unduly inconvenient and of small utility to the defendant.

Once a witness is shown to be unavailable, the next step is to inquire whether the hearsay statement bears adequate indicia of reliability. *Roberts,* 448 U.S. at 66. In determining whether the hearsay statement bears adequate indicia of reliability, the Court noted that "certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" *Id.* Thus, if the evidence falls within a firmly rooted hearsay exception, reliability can be inferred, and the evidence is generally admissible. In *Bauer,* 109 Wis. 2d at 213–14, however, we noted that this does not mean that the evidence is admissible per se. "The trial court must still examine each case to determine whether there are unusual circumstances which may warrant exclusion of the evidence." The existence of unusual circumstances does not mean that a statement is inadmissible. Notwithstanding the existence of unusual circumstances, the statement may be admitted where "the trier of fact has a reasonable basis for evaluating the truthfulness of the prior statement." *Id.* at 214. Furthermore, if the evidence does not fall within a firmly rooted hearsay exception, it may still be admissible if there is a showing of "particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. at 66.

Under the first step of the confrontation analysis, we find that John Martinez was unavailable because he was tried jointly with the defendant and elected not to testify.

Under the second step of the confrontation analysis, we conclude that John's statements fall within a "firmly rooted" hearsay exception, the excited utterance exception, and that no unusual circumstances are present in this case which warrant the exclusion of the statements.

The question of whether a hearsay exception is "firmly rooted" does not turn upon how long the rule has been accepted but rather how solidly it is grounded on considerations of reliability and trustworthiness, the very reasons for the right to confrontation. *State v. Wyss,* 124 Wis. 2d 681, 709–10, 370 N.W.2d 745 (1985). The rationale for the "excited utterance" exception "lies in the special reliability which is regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication." C.T. McCormick, McCormick on Evidence, sec. 297 at 855 (3d ed. 1984). The rule recognizes that a person is not likely to fabricate a statement relating to a startling event or condition while that person is under the excitement caused by the event or condition. We conclude, therefore, that a statement made under the stress of excitement caused by a startling event or condition meets the requirement of reliability for confrontation purposes in the absence of unusual circumstances. Consequently, we find that the excited utterance exception to the hearsay rule is "firmly rooted" within the meaning of *Ohio v. Roberts,* 448 U.S. at 65–66. *See Puleio v. Vose,* 830 F.2d 1197, 1206 (1st Cir. 1987); *United States v. Moore,* 791 F.2d 566, 574 (7th Cir. 1986); *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1057 (6th Cir. 1983), *cert. denied* 464 U.S. 1071 (1984).

As a result, because John Martinez' statements fit within a "firmly rooted" hearsay exception, the reliability of the statements can be inferred. Nevertheless, we

must still examine the record to determine whether there are any unusual circumstances which may warrant the exclusion of the statements.

The defendant maintains that there are unusual circumstances in this case which warrant the exclusion of the statements made by John. Two of the circumstances raised by the defendant warrant discussion. The defendant argues that John's judgment was impaired by intoxicants at the time he made the statements. In addition, the defendant contends that the fact that the statements were made in Spanish undermined the reliability of the statements because the statements had to be translated.

We disagree. We find that the fact that John may have been intoxicated when he made the statements would not significantly affect the reliability of an otherwise admissible excited utterance under sec. 908.03(2), Stats. In regard to the fact that John's statements had to be translated, we note that four witnesses testified at the defendant's trial as to John's statements, and any problems in the translation of the statements could have been fully explored during cross-examination of the four witnesses. As a result, on the basis of the record before us, we find that there are no unusual circumstances which would warrant the exclusion of the statements made by John Martinez during the fight with David Quiroz.

In conclusion, we hold that the extrajudicial statements made by the defendant's nontestifying codefendant were properly admitted into evidence under the excited utterance exception to the hearsay rule, sec. 908.03(2), Stats., and that the defendant's right to confront the witnesses against him was not violated.

*By the Court.*—The decision of the court of appeals is affirmed.